UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARIEH GILDOR,

                                              Plaintiff,

        v.                                              04-CV-1320

UNITED STATES POSTAL SERVICE,
Cobleskill, NY; DAVID DEGEORGE, of the
Post Office in Cobleskill, NY; MARK HAREISON,
of the Post Office in Cobleskill, NY;
I.P. MINGO, Supervisor Postal Service, 4218th Avenue,
Room 2029A, NY, NY.,

                                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES:**                          **OF COUNSEL:**

ARIEH GILDOR
*Pro Se*
PO Box 74
Summit, NY 12175

OFFICE OF THE UNITED STATES ATTORNEY   BARBARA COTTRELL, AUSA
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207
*Attorneys for Defendants*

LAWRENCE E. KAHN
United States District Judge

## **MEMORANDUM-DECISION and ORDER**[1]

**I.     INTRODUCTION**

Plaintiff Arieh Gildor commenced the instant action against Defendants asserting claims for breach of contract and negligence arising out of the Postal Service's loss of a package containing gold rings.  Presently before the Court are: (1) Defendants' motion to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to FED. R. CIV. P. 56; and (2) Plaintiff's cross-motion for leave to file an amended complaint asserting a cause of action for fraud.

**II.     FACTS**

On March 20, 2004, Plaintiff went to the United States Post Office at Cobleskill, New York to mail a package to an individual in France via international Express Mail.  (Def.'s Stmnt. of Mat. Facts at ¶ 1.)  In furtherance of this transaction, Plaintiff completed a mailing label and completed the PS Form 2976-A Customs Declaration and Dispatch Notice. (Compl. at Ex. 2; Def.'s Stmnt. of Mat. Facts at ¶¶ 3-5.)  Plaintiff handed the package to United States Postal Service employee Edward DeMagistris.  (Def.'s Stmnt. of Mat. Facts at ¶ 6.)  Plaintiff inquired whether the package could be insured.  (Id. at ¶ 8.)  DeMagistris advised that the package could be insured up to $5,000.  (Id. at ¶ 9.)

In addition to shipping charges, Plaintiff paid an insurance fee of $49.00 to provide insurance coverage up to $5,000.  (Id. ¶ 5.)  This was indicated on the face of the mailing label.  The Postal Service accepted the package for delivery.  Plaintiff was given the customer copy of the mailing label.  (Id. at ¶ 3.)  Ultimately, the package was returned to

---

[1] For printed publication in the Federal Reporter

Plaintiff empty.  (Id. at ¶ 15).  Plaintiff filed a claim for indemnity with the Postal Service.  (Id. at ¶¶ 18-19.)  The International Claims and Inquiries Office denied the claim on the ground that the contents of the package were prohibited items for Express Mail to France for which there could be no indemnity.  (Id. at ¶ 25.)  Plaintiff appealed this decision.  (Id. at ¶ 26.)  Upon review, the denial was upheld.  (Id. at ¶ 27.)  Further appeal was taken to International Indemnity Claims, International Business at the United States Postal Service headquarters in Washington, D.C.  (Id. at ¶¶ 28-29.)  The denial was again upheld.  (Id. at ¶ 29.).

Plaintiff then filed a claim with the Postal Service pursuant to the Federal Tort Claims Act.  This claim was denied based on the exception found at 28 U.S.C. § 2680(b).  (Id. at ¶ 31.)  Plaintiff then commenced the instant lawsuit claiming that the Postal Service is in breach of contract and was otherwise negligent.

III.    DISCUSSION

    a.   **Summary Judgment Standard**

The Court will treat Defendants' motion as made pursuant to Federal Rule of Civil Procedure 56 because Defendants submitted materials outside of the pleadings, Plaintiff has been given notice of Defendants' intention to seek summary judgment, Plaintiff has been given notice of the consequences of failing to properly respond to a motion for summary judgment, and Plaintiff also has submitted materials outside of the pleadings and otherwise responded to the motion for summary judgment.

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### b. **Sovereign Immunity**

As a general rule, the United States enjoys sovereign immunity. Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005), petition for cert. filed, 73 U.S.L.W. 3570 (U.S. Mar. 22, 2005). This immunity extends to federal agencies and officers acting in their official capacities. Id. The Federal Tort Claims Act ("FTCA") waives sovereign immunity for certain types of actions. See generally 28 U.S.C. § 1346(b); see also Syms v. Olin Corp., 408 F.3d 95, 107 (2d Cir. 2005). The FTCA also contains provisions expressly retaining sovereign immunity for certain claims against the government. See 28 U.S.C. § 2680. The Court will now address the applicability of the FTCA to the claims asserted in this case.

### 1.    Misdelivery of the Package

Defendants move to dismiss the claim for misdelivery and/or negligence on the ground that the Postal Service is entitled to sovereign immunity.  The FTCA expressly retains sovereign immunity for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."  28 U.S.C. § 2680(b); see Dolan v. United States Postal Serv., 377 F.3d. 285 (3d Cir. 2004), cert. granted, 125 S. Ct. 1928 (2005); Raila v. United States, 355 F.3d 118, 120-21 (2d Cir. 2004); Marine Ins. Co., Ltd. v. United States, 378 F.2d 812 (2d Cir. 1967).  To the extent Plaintiff's damages (direct and consequential) are attributed to the loss, miscarriage, or negligent transmission of the package, the Court lacks jurisdiction and the Complaint must be dismissed.  Raila, 355 F.3d at 121 (noting that there is sovereign immunity for claims for "the postal material itself and consequential damages therefrom").

### 2.    The Insurance Provision

The evidence in the record is that Defendants informed Plaintiff that his package could be insured up to $5,000.  As a general matter, insurance up to $5,000 is available.  However, the International Mail Manual ("IMM")[2] provides that there will be no indemnity on claims concerning Global Express Mail shipments where the contents are prohibited.  (IMM at 935.2, Def.'s Ex. J.)  The IMM expressly provides that jewels and jewelry are "not mailable in Global Express Mail (EMS) shipments."  (IMM at 134.1, Def.'s Ex. J; see also IMM at 221.2 ("The following items are prohibited in all EMS shipments: coins; banknotes; currency notes (paper money); securities of any kind payable to bearer; traveler's checks; platinum, gold,

---

[2] The IMM is incorporated by reference into the Code of Federal Regulations at 39 C.F.R. Part 20.

and silver (manufactured or not); precious stones; jewelry; and other valuable articles.").

Moreover, the back of the mailing label provided to Plaintiff at the time of shipment read

> Insurance is provided only in accordance with postal regulations in the . . . International Mail Manual. The . . . IMM set[s] forth the specific types of losses that are covered [and] the limitations on coverage. . . . The . . . IMM consist[s] of federal regulations, and USPS personnel are NOT authorized to change or waive these regulations or grant exceptions. . . . Indemnity is not paid for items containing . . . gold, . . . jewelry, and other valuable or prohibited items.

(Def.'s Stmnt. of Mat. Facts at ¶ 13.)  Accordingly, pursuant to the IMM and the shipping label

provided to Plaintiff, he cannot be indemnified for his package because it constituted a

prohibited item for which indemnity was not available.[3]

---

[3] In the individual country listings portion of the IMM, it is noted that, with respect to shipments to France, "[g]old coins or other articles of gold require that the addressee have a permit issued by the Bank of France (not required for gold-plated articles or for ornaments or jewelry containing only small amounts of gold and weighing 500 grams or less)."  (Def.'s Ex. J.)

Plaintiff contends that there is a "contradiction between [the] absolute prohibition on jewelry [apparently referring to the IMM's direct prohibition] and partial prohibition on gold which applies only to over 500 grams [apparently referring to France's restrictions]."  The Court finds no contradiction.  The IMM provides a blanket prohibition on sending jewelry and jewels via Global Express Mail.  This is not inconsistent with France's own restriction that requires the addressee of an article being sent into that country to obtain a permit from the Bank of France.

Furthermore, contrary to Plaintiff's apparent belief, the Court does not understand France's restriction as applying only to gold that weighs over 500 grams.  Rather, there is no need to obtain a permit from the Bank of France if the total weight of the item is 500 grams or less and the item contains only small amounts of gold.  This does not refer to items containing five hundred grams of gold or less.  Five hundred grams (over one pound) is not a small amount of gold.

Plaintiff also contends that the reasons for the denial of his claim referred to the Universal Postal Convention.  The Universal Postal Convention considers gold and jewels to be prohibited items, Universal Postal Conv. at Art. 12, sec. 6.1, and prohibits indemnification on prohibited items. Universal Postal Conv. at Art. 19, sec. 2.4.  The United States is a signatory to the Universal Postal Convention.  See, e.g., 39 U.S.C. § 407(a)(1) ("The Secretary of State shall have primary responsibility for formulation, coordination and oversight of policy with respect to United States participation in the Universal Postal Union, including the Universal Postal Convention and other Acts of the Universal Postal Union, amendments thereto, and all postal treaties and conventions concluded within the framework of the Convention and such Acts.").  This explains why the IMM contains prohibitions similar to that of the Universal Postal Convention.

Plaintiff contends that Defendants wrongfully sold insurance for the package.  In short, Plaintiff asserts that Defendants told him that insurance was available for his package and charged him $49.00 for such insurance when, in fact, jewelry is a prohibited item for express mail to France and insurance will not pay on prohibited items.  According to Plaintiff, this is a breach of contract.  This also is the basis of Plaintiff's application to file an amended complaint sounding in fraud.

Plaintiff's claims that Defendants misrepresented the insurability of the package are barred.  The FTCA expressly retains sovereign immunity for claims of intentional or negligent misrepresentation.[4]  28 U.S.C. § 2680(h); see United States v. Neustadt, 366 U.S. 696, 702 (1961) (holding that 28 U.S.C. § 2680(h) "comprehends claims arising out of negligent, as well as willful, misrepresentation."); Ingham v. E. Airlines, Inc., 373 F.2d 227, 239 (2d Cir. 1967).  This similarly applies to any claims of fraud.  See Edelman v. Fed. Hous. Admin., 382 F.2d 594, 597 (2d Cir. 1967); see also Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 96 (3d Cir. 1995) (and cases cited therein); Owyhee Grazing Ass'n, Inc. v. Field, 637 F.2d 694, 697 (9th Cir. 1981) ("[C]laims against the United States for fraud . . . are absolutely barred by 28 U.S.C. § 2680(h).").  Thus, any claims sounding in misrepresentation or fraud must be dismissed and Plaintiff's motion for leave to file an amended complaint asserting a claim of fraud must be denied as futile.

---

[4] Although the government did not raise 28 U.S.C. § 2680(h) as a defense, the Court must address it *sua sponte* because a finding of sovereign immunity would deprive this Court of subject matter jurisdiction.  See Dotson, 398 F.3d at 177.

### c.   Breach of Contract - Equitable Estoppel

Plaintiff contends that the failure to indemnify him constitutes a breach of contract. There is no evidence upon which a reasonable trier of fact could conclude that Defendants breached any contract.  As previously noted, the form provided to Plaintiff at the time of mailing stated, in part, that:

> Insurance is provided only in accordance with postal regulations in the . . . International Mail Manual.  The . . . IMM set[s] forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, conditions of payment, and adjudication procedures.  Copies of the . . . IMM are available for inspection at any post office and online at pe.usps.gov. . . .  The . . . IMM consist[s] of federal regulations, and USPS personnel are NOT authorized to change or waive these regulations or grant exceptions. . . .
>
> For international Express Mail shipments, international coverage may vary by country and may not be available to some countries.  Indemnity is not paid for items containing coins, banknotes, current notes (paper money); securities of any kind payable to the bearer; traveler's checks; platinum, gold, and silver (manufactured or not); precious stones; jewelry, and other valuable or prohibited articles.

Thus, Plaintiff was provided with information that there would be no indemnity for the types of articles he wished to send.  Defendants' refusal to pay on Plaintiff's claim is in accordance with the terms provided to Plaintiff upon mailing and, therefore, is not a breach of contract.

Plaintiff also claims that the government should be equitably estopped from denying coverage because the postal employees represented that insurance was available for his package and the customer label provided to him at the time of mailing (that contained the notices set forth above) were "partly glued together" and, therefore, he did not see the notices.

The Second Circuit recently explained the doctrine of equitable estoppel as follows:

> Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. . . . [T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading. . . . Further, the truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment. . . .

In re Becker, 407 F.3d 89, 98-99 (2d Cir. 2005) (internal quotations, citations, and alterations omitted). Moreover, the doctrine is applied differently to the government than private parties.

As the Second Circuit continued to explain:

> Insofar as concerns an assertion of estoppel against the government, the Supreme Court has thus far declined to adopt a rule that the United States or its agencies may never in any circumstances be estopped; but it has made clear that "the Government may not be estopped on the same terms as any other litigant," because "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." [Heckler v. Comm. Health Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984)]; see, e.g., United States v. Boccanfuso, 882 F.2d 666, 669 (2d Cir. 1989) ("The principle of equitable estoppel is not applied to the Government on the same terms as it is to private citizens. . . . The different standard for estoppel of the Government springs from the tenet that estoppel would frustrate the Government's ability to enforce the law and, in turn, undermine the public interest in full enforcement of the law."). "Thus, assuming estoppel can ever be appropriately applied against the Government," Community Health Services, 467 U.S. at 66, a "private party surely cannot prevail" on such an estoppel claim "without at least demonstrating that the traditional elements of an estoppel are present," id. at 61. A party must therefore show that the Government made a misrepresentation on which the party reasonably relied to its detriment. We will not find an estoppel where the claimant "could not have reasonably relied on any Government misrepresentation." United States v. Boccanfuso, 882 F.2d at 670.

<u>In re Becker</u>, 407 F.3d at 99.  Further, it has been noted that "[t]he doctrine of equitable estoppel is not available against the government except in the most serious of circumstances, and is applied with the utmost caution and restraint.  Specifically, estoppel will only be applied upon a showing of affirmative misconduct by the government."  <u>Rojas-Reyes v. I.N.S.</u>, 235 F.3d 115, 126 (2d Cir. 2000) (internal quotations and citations omitted); <u>see</u> <u>also</u> <u>City of New York v. Shalala</u>, 34 F.3d 1161, 1168 (2d Cir. 1994) (requiring showing of affirmative misconduct on the part of the government).

   Here, no reasonable trier of fact could conclude that Plaintiff reasonably relied on any representations by Defendants.  This is primarily because Plaintiff had the means by which, with reasonable diligence, he could have learned the restrictions on insurability.  Had Plaintiff read the reverse side of the Express Mail label, he would have learned that indemnity was not available for gold and jewelry notwithstanding any statements by Postal Service employees.  In a somewhat similar case, the First Circuit held that it was not reasonable to rely upon statements by postal clerks that are contrary to the writings on a written receipt given to the customer.  <u>A.E. Alie & Sons, Inc. v. U.S. Postal Serv.</u>, 897 F.2d 591, 592-93 (1st Cir. 1990); <u>see also</u> <u>Rider v. United States Postal Serv.</u>, 842 F.2d 239 (9th Cir. 1988); <u>Moody v. United States</u>, 783 F.2d 1244 (5th Cir. 1986).

   Even assuming Plaintiff did reasonably rely on representations by Defendants, there is insufficient evidence in the record upon which a reasonable trier of fact could conclude that the government engaged in affirmative misconduct.  At most, the statements by the Postal Service employees and the failure of Postal Service computers to alert Postal Service employees of the indemnity restrictions constitute negligence.  <u>See</u> <u>Moody</u>, 783 F.2d at 241 ("A simple misstatement is not affirmative misconduct.  The fact that the incorrect

information is given orally makes it even less likely to rise to the level of affirmative misconduct."). The undisputed evidence in the record is that the Postal Service employees at issue here were unaware that gold and jewelry were prohibited items. This lack of knowledge undercuts any claim of affirmative misconduct and is suggestive only of negligence.

### d. **Individual Defendants**

The claims against the individual defendants also must be dismissed. There is no evidence in the record that the individual defendants acted outside the scope of their authority as employees of the United States Postal Service. As such, any actions by them in this case were actions by the United States Postal Service; not the individuals in their individual capacities. 28 U.S.C. § 2679(b)(1). The absence of evidence from which a reasonable jury could conclude that any of the individual defendants acted intentionally to mislead Plaintiff belies a finding that they acted outside the scope of their employment.

Although the Court sympathizes with Plaintiff's frustration with the United States Postal Service, unfortunately, relief is not available in this case.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that Defendants' motion for summary judgment is **GRANTED**; and it is further,

ORDERED, that Plaintiff's motion for leave to file an amended complaint is **DENIED**; and it is further

ORDERED, that the Complaint is hereby **DISMISSED** and the Clerk of the Court is directed to close the file in this matter.

IT IS SO ORDERED.

Dated:   July  12, 2005
            Albany, New York.

_____
Lawrence E. Kahn
U.S. District Judge