UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

Arieh Gildor,

                        Plaintiff,

   -against-                                1:04-CV-1320
                                                      (LEK/ DRH)

United States Postal Service,

                        Defendant.

## **MEMORANDUM-DECISION AND ORDER**[1]

### **I. Background**

This case was brought by Plaintiff Arieh Gildor ("Gildor"or "Plaintiff") after Defendant United States Postal Service ("USPS" or "Defendant") refused to indemnify him for the loss of the contents of a package he mailed via Global Express Mail. On March 20, 2004, Gildor brought a package to the United States Post Office in Cobleskill, New York to be sent to France via Global Express Mail. Plntf's Mem. of Law (Dkt. No. 43) at 2. Gildor asked the USPS window clerk on duty at the time if the package could be insured for shipment to Paris. <u>Id.</u> Upon being told that the package could be insured for up to $5,000.00, Plaintiff paid $49.00 for $5,000.00 of insurance, in addition to the shipping costs, for a total of $68.15. <u>Id.</u> Plaintiff alleges that, prior to purchasing the insurance, he discussed with USPS's employee whether jewelry could be shipped and insured via Global Express Mail and was told that there would be no problem. <u>Id.</u> Plaintiff's U.S. Customs declaration indicates that the contents of the package are "2 rings." Customs Receipt (Dkt. No. 1, Ex. 2). Eventually, the package was returned to Plaintiff empty. Plntf's Mem. of Law (Dkt. No. 43)

---

[1] For printed publication by the Federal Reporters.

at 3. Plaintiff's attempt to collect on the insurance policy was unsuccessful; USPS denied his claim on the grounds that the contents of the package were prohibited items in Global Express Mail and would not indemnify Plaintiff for his loss, according to the terms of the International Mail Manual ("IMM"), Section 935.2, Payments for Global Express Mail, When Prohibited, at 278. Id.; Deft's Motion to Dismiss (Dkt. No. 18) at 3; IMM (Dkt. No. 18, Exhibit 6, Attach. J) at 278. On November 15, 2004, after exhausting his administrative remedies, Plaintiff filed suit in this Court against USPS and three USPS employees, David DeGeorge, Mark Harbison and I.P. Mingo, claiming negligence and breach of contract. Complaint (Dkt. No. 1) at 1-2.

On July 12, 2005, this Court granted summary judgment to Defendants DeGeorge, Harbison, Mingo and USPS on both the tort and contract claims. Order (Docket No. 32). The negligence claims were dismissed against DeGeorge, Harbison, and Mingo because, to the extent that their actions gave rise to Plaintiff's claims, they were acting within the scope of their employment. See id. at 11; 28 U.S.C. §2679(b)(1). Additionally, the negligence claims against USPS were dismissed because Plaintiff's claims did not fall within an exception to sovereign immunity, and were thus barred. Order (Docket No. 32) at 7. Finally, Plaintiff's claims against USPS arising in contract were dismissed on the grounds that USPS had not been contractually bound to indemnify Plaintiff for any loss of jewelry shipped via International Express Mail. Id. at 8. This Court found that despite the false representations of USPS employees that Plaintiff's jewelry would be covered in the case of loss, USPS was not equitably estopped from denying coverage. Id. at 10-11. This was based, in part, on Plaintiff's failure to prove affirmative misconduct by USPS employees. Id.

The Court of Appeals for the Second Circuit affirmed the decision, except for the dismissal of Plaintiff's contract claim against the USPS. Gildor v. U. S. Postal Serv., 179 F. App'x 756

(2006) (unpublished). The Second Circuit vacated the Order for summary judgment on Plaintiff's contract claim, finding that "a reasonable trier of fact could find that it was reasonable for Gildor to rely on the assurance of the postal employees," and remanded. Id. at 759-60. The Second Circuit directed this Court to consider the Seventh Circuit holdings in Azar v. U. S. Postal Service, 777 F. 2d 1265 (7th Cir. 1985) and Portmann v. United States, 674 F.2d 1155 (7th Cir. 1982) and examine whether affirmative misconduct should be a prerequisite for the imposition of equitable estoppel on USPS. Id. This Court now considers Defendant's Motion for summary judgment, in light of the Second Circuit's analysis.

## II. Discussion

A. Jurisdiction of District Court Over Plaintiff's Contract Claim

Defendant alleges that Plaintiff's claim is not properly heard before this Court because contract claims against the federal government in excess of $10,000 must be brought in the United States Court of Federal Claims, as dictated by the Tucker Act. 28 U.S.C. §1346(a)(2); 28 U.S.C. §1491(a)(1). However, "most courts have held that a claim brought against the USPS in its own name is not a claim against the United States and thus is not governed by the Tucker Act." Beckman v. U. S. Postal Serv., 79 F. Supp. 2d 394, 406 (S.D.N.Y. 2000). See also Licata v. U. S. Postal Serv., 33 F.3d 259, 263 (3rd Cir. 1994) (noting that "it is well settled" that a claim against USPS in its own name is not governed by the Tucker Act). This Court's jurisdiction over this case is not dependant on the Tucker Act; section 409(a) of the Postal Reorganization Act granted United States District Courts jurisdiction "over all actions brought by or against" USPS. 39 U.S.C. §409(a). Accordingly, this Court properly retains jurisdiction over Plaintiff's contract claim.

3

B. Does USPS's Settlement Offer Make This Case Moot?

On October 12, 2006, Defendant USPS made an offer, under Rule 68 of the *Federal Rules of Civil Procedure,* to pay Plaintiff $5,500, which constituted the amount of the original insurance contract plus Plaintiff's court fees. Offer (Dkt. No. 45, Attach. 1, Ex. D). Plaintiff rejected the offer on the grounds that the amount did not make Plaintiff whole, in that Plaintiff would not recover his administrative, private investigative, and legal expenses. Plntf's Reply Mem. of Law (Dkt. No. 52) at 2-4. USPS argues that the offer rendered the case moot, because it could not be subject to an amount greater than the amount offered if Plaintiff's contract claim was successful. Offer (Dkt. No. 45) at 4. Defendant is correct that a rejected settlement offer which would have given Plaintiff all the benefits of litigation victory would moot the case. Fox v. Bd. of Trustees of State Univ. of New York, 42 F.3d 135, 140 (2d Cir. 1994). See also McCauley v. Trans Union, L.L.C., 402 F.3d 340, 341-2 (2005). However, Plaintiff disputes USPS's claim that its liability is limited to the amount of the insurance contract and court costs. Specifically, Plaintiff alleges that USPS could be liable for prejudgment interest, litigations expenses and punitive damages. Plntf's Reply Mem. of Law (Dkt. No. 52) at 2-4.

Prejudgment interest is recoverable against USPS, if the substantive law governing the underlying claim allows such recovery. Loeffler v. Frank, 486 U.S. 549, 557 (1988). As long as there is no "significant conflict between the state rule and a federal interest," the state rule, New York substantive law in this case, would govern. Palmieri v. Allstate Ins. Co., 445 F.3d 179, 188-89 (2d Cir. 2006). The New York rule awards prejudgment interest at the rate of nine (9) percent per annum. N.Y. C.P.L.R. §5001(a). Although exposing a state agency to liability for prejudgment interest can be seen as conflicting with federal financial interests, the Supreme Court has

specifically allowed an interest award against USPS. Loeffler, 486 U.S. at 556. Thus, it can be presumed that the state rule allowing prejudgment interest does not conflict with a federal interest and New York substantive law applies.

Because, if successful, Plaintiff may be entitled to prejudgment interest of nine percent per annum, USPS's settlement offer, which does not encompass that amount, cannot be determined to moot the case before the court. Accordingly, it is not necessary to address the issue of USPS's potential liability for punitive damages or Plaintiff's litigation expenses at this time.

C. The Applicability of Equitable Estoppel

1. Elements of an Equitable Estoppel Claim

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." In re Becker, 407 F.3d 89, 98-99 (2d Cir. 2005). The requirements to invoke equitable estoppel successfully are (1) that the party claiming estoppel relied on a misrepresentation or concealment of facts; and (2) changed his position for the worse based on that reliance. Id. at 99. The relying party must show that he or she did not know the truth, that his or her reliance was reasonable and that refusing estoppel would cause him or her injury. Id.; Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of North America, 951 F.Supp. 1097, 1111 (S.D.N.Y. 1997).

As is proper in evaluating a Motion for summary judgment, this Court must view all facts and construe all ambiguities in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194 (2d Cir. 2007). Under that standard, Plaintiff meets all of the aforementioned elements of invoking estoppel. He was told by a USPS employee that the contents of his package were insurable against damage or loss, although that was factually untrue. Plaintiff relied upon the incorrect information provided by the USPS employee in

sending the package via USPS with purchased insurance. As for the reasonableness of Plaintiff's reliance, the Second Circuit has already determined that "a reasonable trier of fact could find that it was reasonable for Gildor to rely on the assurance of the postal employees." Gildor, 179 F. App'x at 759. Assuming these four prongs were sufficient to establish equitable estoppel, Plaintiff would have established that his claim to equitable estoppel could succeed.

### 2. Affirmative Misconduct Requirement

*i. Background*

USPS argues that, as a governmental entity, it cannot be estopped "on the same terms as any other litigant." Heckler v. Comm. Health Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984). This claim is based on the traditional rule that "a plaintiff must show affirmative misconduct going beyond inadvertent misrepresentation in order to assert estoppel against the government." Mapoma v. U. S. Postal Serv., No. CV-93-4755 (CPS), 1996 WL 19168, at *3-4 (E.D.N.Y. Jan. 11, 1996) (citing Schweiker v. Hansen, 450 U.S. 785 (1981), and INS v. Miranda, 459 U.S. 14 (1982)). See also Rojas-Reyes v. INS, 235 F.3d 115, 126 (2d Cir. 2005). This rule stems from concerns that estoppel preventing the Government from enforcing its regulations would negatively impact the public, either impeding the enforcement of federal law or threatening the public fisc. See United States v. Boccanfuso, 882 F.2d 666, 669 (2d Cir. 1989) ("The different standard for estoppel of the Government springs from the tenet that estoppel would frustrate the Government's ability to enforce the law and, in turn, undermine the public interest in full enforcement of the law"); Schweiker, 450 U.S. at 788.

*ii. USPS Exception for Affirmative Misconduct Requirement*

The Court of Appeals for the Seventh Circuit has carved out a narrow exception to the

requirement that affirmative misconduct be required for an equitable estoppel claim to succeed against the government in Portmann v. United States, 674 F.2d 1155 (7th Cir. 1982) and Azar v. U.S. Postal Serv., 777 F.2d 1265 (7th Cir. 1985).  Like the case currently before the Court, the exception involves equitable estoppel against USPS for refusal to indemnify an individual after the contents of his Express Mail package were lost or stolen, on the grounds that the insurance was invalid as applied to the contents of the package.  In those decisions, the Seventh Circuit found that the justifications for insulating the government from estoppel did not apply on these facts.   Instead, the Court found that Congress intended USPS to be "a nearly self-sustaining enterprise competitive with other commercial ventures," and that, accordingly, it should be held to the same commercial standards as other common carriers and estopped, when equity demands it.  Azar, 777 F.2d at 1271.  Even within the Seventh Circuit, this rule has been applied only to a very narrow category of factually similar cases. See Mendrala v. Crown Mortgage Co., 955 F.2d 1132, 1142 (7th Cir. 1992); U. S. Postal Serv. v. Univ. Publ'g Co., 835 F. Supp. 489, 492 (S.D. Ind. 1993) (refusing to apply the rule to mail service outside of express mail).

This Court finds the reasoning behind the Seventh Circuit's exception to be persuasive.[2]   In justifying its decisions in Portmann and Azur, the Seventh Circuit pointed to evidence of governmental intent that USPS be competitive with private business.  Portmann, 674 F.2d at 1168 (referring specifically to the Postal Reorganization Act of 1970, which aimed to make USPS financially independent and business-like).  The theory that "Congress has launched [USPS] into the

---

[2] As Defendant points out, other courts outside of the Seventh Circuit have not adopted the Portmann/Azar exception. See Rider v. U. S. Postal Serv., 862 F.2d 239, 242 (9th Cir. 1988); A.E. Alie & Sons, Inc. v. U.S. Postal Serv., 897 F.2d 591, 593 (1st Cir. 1990); Persick v. U.S. Postal Serv., No. Civ. A. 00-5062, 2001 WL 185543, at *2 (E.D. Pa Feb. 23, 2001); Moody v. United States, 783 F.2d 1244, 1247 (5th Cir. 1986). However, each of those cases are factually distinguishable from the one before the Court and none of those Courts' decisions are binding on this Court. Accordingly, this Court considers this issue independently.

commercial world" and, accordingly, USPS should be held to commercial standards has been adopted widely. Franchise Tax Bd. of Cal. v. U. S. Postal Serv., 467 U.S. 512, 520 (1984) (internal quotation omitted) (holding that "we must presume that the Service's liability is the same as that of any other business"). See also Beneficial Fin. Co. v. New York, 571 F.2d 125, 128 (2d Cir. 1978) ("there is no doubt that the congressional purpose in establishing the USPS was to permit the postal service to operate in a business-like fashion") (internal quotation and citation omitted); Young v. U.S. Postal Serv., 698 F. Supp. 1139, 1141 (S.D.N.Y. 1988).

As of December 2006, there is even more evidence that Congress intended USPS to operate on a level playing field with its private competitors, through the enactment of the Postal Accountability and Enhancement Act, Pub. L. No. 109-435, H.R. 6407 (2006) (to be codified as 39 U.S.C. §3600 et seq.). This Act clearly attempts to minimize the differences between USPS and private companies providing similar products and services. See H.R. 6407 §703 (a)-(b) (requiring USPS to study the ongoing legal difference between itself and its competitors and ways to eliminate those differences); Cost Estimate for H.R. 6407, Postal Accountability and Enhancement Act, Congressional Budget Office (Dec 27, 2006) (noting that the changes to USPS contained in H.R. 6407 were "designed to increase the Postal Service's competitiveness with private industry").

The congressional effort to reform USPS was governed by five (5) principles: best practices, transparency, flexibility, accountability and self-financing. Postal Accountability and Enhancement Act, H. R. Rep. No. 108-672(I), at 2 (2004). None of these principles are advanced by allowing USPS to evade its promises to customers. In contrast, allowing for estoppel against USPS in a situation like that before the Court, where Plaintiff relied upon the assurances of USPS employees when deciding to purchase USPS services, will allow USPS to regain the public's trust and to meet

8

service, fairness, and accountability standards that consumers rightly expect of any competitive business.  Plaintiff notes that, if he had been told that USPS could not indemnify him against loss, he would have used a competitor's service to mail his package, with valid insurance.  USPS argues that, in contrast to its private competitors, it cannot make a business decision about whether it should ship jewelry internationally because it is bound by the terms of the Universal Postal Convention.  This restriction does not, however, entitle USPS to compete by misleading consumers about the terms of their services.  The Second Circuit has noted that "the claim that the USPS should retain…broad immunity…simply ignores the responsibilities which attend its new autonomy."  Beneficial Fin. Co. of New York, 571 F.2d at 128.  USPS's responsibilities have grown as it has gained autonomy; its practical immunity from equitable estoppel is no longer appropriate.

      The traditional justifications for the requirement that affirmative misconduct be shown before the government is estopped are not compelling in this case.  The threat to the public fisc is limited in that only a small number of claims against USPS could possibly arise from the refusal to indemnify consumers of Express Mail services who relied upon express or implied claims that they were insured.  More significantly, the financial threat is limited by the extent to which USPS employees improperly misrepresent the availability of indemnification.  USPS has an opportunity to limit its liability on such claims by ensuring that its employees are trained in the services offered and the rules and regulations that govern those services.

      The other oft-cited justification for an affirmative misconduct requirement, the claim that estopping governmental entities from enforcing their own regulations impedes the enforcement of federal law, is similarly inapplicable.  USPS regulations expressly prohibit the indemnification of certain items mailed via Global Express Mail.  IMM, Section 935.2 (Dkt. No. 18, Exhibit 6, Attach.

J). However, allowing USPS to escape liability for misrepresenting its coverage is in conflict with the federal directives which establish best practices, customer service and accountability as important objectives. Estopping USPS from relying on the above regulation in this situation creates a lesser threat to the public interest than consumers viewing USPS, its employees, and the federal government with distrust.

Moreover, the public interest is best served by preserving public confidence in the integrity of government. While, as USPS notes, the government cannot be expected to "secure perfect performance from its hundreds of thousands of employees," Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 433 (1990), USPS employees deserve to have their knowledge, training and experience credited, along with the opportunity to earn the trust of the public.

Finally, the public interest in remedying inequity suffered by members of the public must be recognized, especially when the inequity is created at the hands of the Government. As Justice Jackson observed, in recognizing the fundamental unfairness created by federal agencies' practical immunity from estoppel, "[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." Fed. Ins. Corp. v. Merrill, 332 U.S. 380, 387-88 (1947) (J. Jackson, dissenting).

For the foregoing reasons, this Court holds that affirmative misconduct is not required to estop USPS in this case.

D. Does Payment from the USPS constitute payment from the US Treasury, as discussed in OPM v. Richmond and Fed. Crop. Ins. v. Merrill?

The Second Circuit directed this Court, if it found that the affirmative misconduct requirement should not apply to the USPS, to determine whether the Supreme Court's holding in

OPM v. Richmond bars recovery for Plaintiff.  Gildor, 179 F. App'x at 760.  It does not.  In Richmond, the Supreme Court held that the Appropriations Clause of the United States Constitution, Art. I, § 9, cl. 7, prevents the use of collateral estoppel to obtain payment from the United States Treasury.  496 U.S. at 424-28.  USPS concedes that, because there is a Postal Service Fund, distinct from the United States Treasury, the Appropriations Clause does not bar recovery by Plaintiff.  Deft's Reply Brief (Dkt. No. 51) at 9.  See also Portmann, 674 F.2d at 1162-3 (noting that plaintiff's payment against USPS would come "from a self-sustaining fund generated out of the business revenue received by the [USPS]").  USPS argues that the rationale behind Richmond nonetheless prohibits recovery, for the reasons that public policy discourages collateral estoppel against the government. As described at length above, those factors were already found to non-determinative in this case.

### III.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:    April 27, 2007
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge